Argued July 10, affirmed August 23, 1968

STATE OF OREGON, *Respondent, v.*
LARRY J. NUNES, *Appellant.*

444 P. 2d 542

Oscar D. Howlett, Portland, argued the cause and filed the brief for appellant.

Ronald D. Thom, Deputy District Attorney, Oregon City, argued the cause for respondent. With him on the brief were Roger Rook, District Attorney, and Richard F. Crist, Deputy District Attorney, Oregon City.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, DENECKE and RODMAN, Justices.

RODMAN, J. (Pro Tempore).

The defendant was convicted by a jury of the crime of assault and robbery being armed with a dangerous weapon. The three assignments of error are all based upon the out-of-court identification of the defendant by the victim. The first assignment of error is that:

> "The court erred in allowing the State to inform the jury in opening statement that the identifying witness had made extrajudicial identification of the defendant and that a third party (police officer) was a witness to the identification."

The second is that:

> "The court erred in overruling defense counsel's

objection to testimony of Burton Thompson to extrajudicial identification of defendant by way of photographs and line up."

Defendant's third assignment of error is that:

"The court erred in admitting the pretrial lineup identification by Thompson for the reason that it violated his Fifth and Fourteenth Amendment rights in that the procedures adopted were suggestive."

In November 1965, Burton A. Thompson, a taxicab driver, picked up a fare at the Greyhound Bus Depot in Portland and drove him to a location in Clackamas County. There, Thompson was robbed by his passenger at knifepoint. Approximately a month later, Detective Earl Son of the Multnomah County Sheriff's office showed Thompson a number of photographs of individuals. Thompson identified a picture of the defendant as his assailant. In April 1966, Thompson again identified the defendant as his assailant in a lineup in the Multnomah County courthouse. Each man in the lineup was required to walk back and forth and state that his name was John Doe and he was from Portland, Oregon. The others did as directed. Nunes walked back and forth, but, upon instruction of his attorney, said nothing. Nunes has a speech impediment and stutters; none of the others in the lineup had such an impediment. Both Nunes and his attorney, who was present at the lineup, protested his participation in it.

■ We will consider first the defendant's second assignment of error—that the court erred in permitting the victim to testify that he had made an extrajudicial identification of the defendant as his assailant. Thompson testified that the defendant, seated at coun-

sel table, was the man who assaulted him. He also testified that at the lineup he had identified the defendant as the robber. He further testified that he picked the defendant's picture from among the photographs shown to him by Detective Son. However, the latter identification was elicited on cross-examination. Defendant cannot, therefore, claim error in the receipt of that testimony. *Bean v. State,* 234 Md 432, 199 A2d 773 (1964).

■ We hold there was no error in admitting the victim's testimony that he had identified the defendant at the lineup as his robber. *State of Oregon v. Lanegan,* 192 Or 691, 236 P2d 439 (1951); *State v. Wong Wen Teung,* 99 Or 95, 195 P 349 (1921); 4 Wigmore, Evidence 208, § 1130 (3d ed 1940); Annotation, 71 ALR2d 449 (1960), Admissibility of evidence as to extrajudicial or pretrial identification of accused.

In *State v. Evans,* 98 Or 214, 192 P 1062, 193 P 927 (1920), and in *State v. Houghton,* 43 Or 125, 71 P 982 (1903), there is language that might be construed as contrary to this holding. However, examination of the opinion in each case discloses that the objectionable testimony was not that of the person who made the extrajudicial identification, but rather that of a police officer who witnessed the identification. See *State v. Thompson,* 228 Or 496, 364 P2d 783 (1961), for a similar situation in which a police officer was erroneously permitted to testify as to the identification made by the victim of the crime.

■■ In the instant case, also, a police officer, Detective Son, testified that the victim identified a photograph of the defendant as the man who had robbed him. The defendant urges in his brief that this was hearsay and prejudicial. We will not consider it, however, for the following reasons: (1) he did not ob-

ject to it at the trial, (2) he did not make it an assignment of error, and (3) the defendant had previously elicited the identical testimony on cross-examination of the victim. The receipt of incompetent evidence is not prejudicial error where the fact sought to be proved is fully and clearly established by other competent evidence. 5A CJS 1012, Appeal and Error § 1731; *State v. Lanegan,* supra.

The defendant's first assignment of error involves the following portion of the district attorney's opening statement to the jury:

"Mr. Thompson was up in the office of Detective Earl Son, Multnomah County Sheriff's office, and as I told you, while there he was shown some photographs.

"While he was in there, he picked out the photograph of the man that put the knife to him, held a knife up to him and robbed him on that particular night, November 17.

"* * *

"Mr. Thompson will also testify that on April 29, 1966, in the Multnomah County Jail he witnessed a lineup and at this lineup he picked out a man as being that man that robbed him on that night. .

"This Detective Earl Son was in charge of this lineup and will testify to you as to who that man was that was picked out."

Evidence substantiating the above statement was properly received during the course of the trial, except that when Detective Son was asked to testify as to the identity of the man that Thompson picked out in the lineup, objection was made by the defendant and sustained by the court. We find no prejudicial error in the state's reference in opening statement to evidence which it was subsequently unable to pro-

duce because the jury was advised that the opening statements were not evidence, and the same testimony was properly introduced through another witness.

The nature of defendant's third assignment of error is not clear. Apparently, he contends that all testimony of Thompson's identification of him at the police station lineup should have been suppressed because the procedures used were suggestive and, therefore, in violation of his Fifth and Fourteenth Amendment rights. A photograph of the lineup was taken and introduced in evidence at the trial. The subjects are all approximately of the same size and build. They appear to be in one age range. Each was directed to state that his name was John Doe and that he was from Portland, Oregon. In *United States v. Wade,* 388 US 218, 87 S Ct 1926, 18 L ed 2d 1149 (1967), the United States Supreme Court held that it was not violative of a defendant's privilege against self-incrimination to require him to state certain words in a lineup. In that case each subject was required to appear with strips of tape on each side of his face and recite the words "Put the money in the bag."

There is evidence in this case that the defendant on occasion stutters. The victim testified:

> "* * * [H]e seemed like that when he became excited or if I was watching him when he was talking, he had somewhat of a speech impediment. Stuttered a little bit."

Another witness said of Nunes, "He has a tendency to stutter a little. I think when he thinks about what he does, he doesn't stutter quite so much, but he does have a tendency to stutter." Just before the lineup the defendant's attorney objected to his client's participation, but the record does not show upon what

grounds he objected. The others in the lineup spoke the required words; the defendant, on the advice of his attorney, remained silent. We can only speculate whether, if the defendant had chosen to follow the instructions of the police, his "tendency to stutter a little" would have manifested itself in the brief recitation that his name was John Doe and that he was from Portland, Oregon.

██ Police station lineups, properly conducted, are an acceptable criminal investigative procedure, *United States v. Wade,* supra; *Gilbert v. California,* 388 US 263, 87 S Ct 1951, 18 L ed 2d 1178 (1967), and, in fact, fairer and more trustworthy than the isolated exhibition of a suspect to the victim. 4 Wigmore, Evidence, § 1130, supra; *United States v. Forzano,* 190 F2d 687 (2d Cir 1951); *People v. Gould,* 54 Cal2d 621, 354 P2d 865, 7 Cal Rptr 273 (1960). It is not to be expected that police will be able to produce subjects for a lineup who match in all their physical characteristics and traits. We find nothing prejudicial in the instant procedure.

The judgment is affirmed.