OPINION OF THE COURT
Stanley S. Ostrau, J.
This is an application by the People for an order directing that defendant be made to shave or otherwise remove any facial hair and that he appear in a lineup.
The defendant was indicted for murder in Bronx County on October 5, 1972. The indictment accused defendant of shooting and killing one Frederick Guzman on September 15, 1972. The defendant allegedly fled the jurisdiction immediately following the incident and an arrest warrant was issued on October 5, 1972. After a five-year investigation, which took place in and outside of New York City, the defendant was located in Rahway State Prison in New Jersey, from which he was transported, pursuant to the Interstate Detainer Agreement, CPL article 580, on March 24, 1978, to Bronx County to stand trial.
The defendant opposes the application claiming that there is nothing before this court indicating that at the time of the alleged murder the perpetrator was clean shaven other than the hearsay statement of the Assistant District Attorney. The defendant accordingly seeks an evidentiary hearing on this issue.
This court cannot agree. No evidentiary hearing is required. On June 12, 1978 a lineup was attempted, but was aborted when defendant appeared with a full beard and refused to shave. If in fact the perpetrator of the homicide did at the time of the act, have a beard, an order that he shave would inure to his benefit. On the other hand, if the perpetrator was clean shaven at the time, this court is of the opinion that it may direct that the defendant shave and appear at a lineup for the reasons stated below.
The viewing of a defendant in a lineup has implications relating both to the Fifth Amendment right against self incrimination, and the Fourth Amendment protection against unreasonable search and seizure.
In applying the constitutional right against self incrimination, the courts have made a distinction between testimonial evidence, to which the protection does apply (and for which it was originally created), and a compulsion which merely makes *718 an accused the source of real or physical evidence, to which the protection does not apply. The latter category would contain participation by an accused in a lineup as well as the requirement that an accused perform physical acts or demonstrations. In Holt v United States (218 US 245) a defendant was compelled to put on a blouse in order to determine whether it fitted him, after a witness had testified at trial that it belonged to the defendant. Mr. Justice Holmes stated (supra, pp 252-253): "[T]he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material.”
Similarly, in Schmerber v California (384 US 757) the defendant’s conviction for driving while intoxicated was affirmed by the United States Supreme Court. While under arrest and while receiving hospital treatment for injuries sustained in the auto accident a physician, at the direction of a police officer, withdrew a blood sample, despite the defendant’s refusal, on the advice of counsel, to consent to the procedure. The court stated (supra, p 761) with respect to the Fifth Amendment: "We hold that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends.”
The court went on to state (supra, p 764): "both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications’ or 'testimony,’ but that compulsion which makes a suspect or accused the source of 'real or physical evidence’ does not violate it.” (See Breithaupt v Abram, 352 US 432 [taking of blood from an unconscious man]; Smith v United States, 187 F2d 192 [the forcible dyeing of a defendant’s hair during an alleged illegal detention]; People v Ballot, 20 NY2d 600 [compelling defendant to don a hat and heavy coat and speak]; Matter of District Attorney of Kings County v Angelo G., 48 AD2d 576 [compelling a suspect *719 to furnish handwriting exemplars]. In all of these cases, the acts performed were held not to be violative of Fifth Amendment right against self incrimination.)
In People v Strauss (174 Misc 881) the People applied for an order requiring that the defendant be forcibly shaved for his appearance in court. It appeared that since his arrest, defendant had permitted his facial hair to grow.
In granting the application the court stated; (supra, p 882): "The trial court may direct where the defendant shall sit, in what direction he shall face, and to stand up for the purpose of identification. Also, it may strip him of any artificial covering or disquise, and may compel him to submit to compulsory disrobing for the purpose of revealing bodily marks or characteristics which may aid in identification. It may hardly be gainsaid that a defendant may be compelled to appear cleanly washed, suitably dressed and with hair properly combed and brushed.”
Accordingly, based upon Fifth Amendment considerations, this court finds no prohibitions against compelling defendant to shave and appear in a lineup.
Consideration must also be given to defendant’s Fourth Amendment rights, that is, the right not to be subjected to unreasonable search and seizure. Indeed, the Fourth and Fifth Amendments, as they relate to this issue, are inextricably linked.
The Fourth Amendment problem centers around: (1) an unlawful intrusion into the body as a means employed to secure disclosure of information; and (2) an unlawful detention and its accompanying consideration of probable cause to arrest. There must be a balancing of the State’s justification and interest in compelling a defendant or suspect to perform a particular act, as opposed to defendant’s constitutional rights, here the right against unlawful intrusions into his body and his right to determine his personal appearance.
In connection with this point, Schmerber v California (384 US 757, 768, supra) stated: "We begin with the assumption that once the privilege against self-incrimination has been found not to bar compelled intrusions into the body * * * the Fourth Amendment’s proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner.”
*720 The Schmerber decision reflects the Supreme Court’s concern with those intrusions into the body that offend the sense of justice (see Rochin v California, 342 US 165).
This court finds that compelling defendant to shave under these circumstances is not such an intrusion as to be violative of the defendant’s Fourth Amendment right against unlawful intrusion into the body.
With respect to whether or not there was unlawful detention of defendant and/or a lack of probable cause to arrest defendant, it must be noted that this defendant has been indicted for murder in the second degree. This distinguishes the instant case from People v Vega (51 AD2d 33) wherein the court denied the District Attorney’s application to compel defendant to remove facial hair on the ground that no accusatory instrument had been filed with respect to defendant. Defendant was housed at Bronx House of Detention. He had allegedly been identified by photos shown to robbery victims. The photo of defendant presented to the robbery victims did not portray any facial hair. He had permitted his beard to grow while incarcerated. The court held that it would be violative of defendant’s counstitutional rights to compel a shaving and a lineup since no probable cause existed to compel the transfer from Bronx House of Detention to Queens County in view of the fact that no accusatory instrument had been filed with respect to defendant in Queens. The court stated (supra, p 38): "If the District Attorney has probable cause sufficient to sustain an order invading the defendant’s constitutional right to determine his facial appearance, he has sufficient probable cause to have the defendant arrested or to obtain an accusatory instrument charging him with the robberies in Queens County. Any one of these courses of conduct on his part will subject the defendant to the jurisdiction of the Criminal Term.” (See, also, Matter of Mackell v Palmermo, 59 Misc 2d 760.)
Finally, this court notes with approval the analysis set out in the dissent of Mr. Justice Hopkins in People v Vega (supra). Five factors are listed, which, taken together, determine whether under the Fourth Amendment, the compulsion imposed on the individual is reasonable. The factors, and their application to the present case are as follows:
(1) The seriousness of the crime under investigation. The crime in the instant case is the most serious of all crimes, murder.
*721 (2) The degree of the intrusion requested. Here the degree of intrusion is minimal.
(3) The transitory or permanent effect of the intrusion. The beard will be lost to defendant only for the length of time necessary to regrow it.
(4) The nature of the exigency requiring the intrusion. Do sufficient grounds exist to support probable cause for any intrusion? The exigency here requiring the intrusion is that defendant has grown a beard since the time of the crime under investigation, thereby impeding an identification by witnesses.
(5) The reliability and importance of the information sought as a result of the intrusion. Clearly, identification constitutes a crucial part of this case.
A consideration of all these factors, taken together, leads this court to the conclusion that the compulsion imposed on the defendant here is reasonable, and that the order compelling defendant to shave his beard for purposes of the lineup does not violate his Fourth Amendment rights.
Accordingly, the motion is granted in all respects.