## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47961-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| RICHARD G. HALLECK, | |
| Appellant. | |

BJORGEN, C.J. — Richard G. Halleck appeals his conviction and sentence for obstructing a law enforcement officer.  He argues that (1) the State failed to provide sufficient evidence to convict him of obstructing a law enforcement officer, (2) his trial counsel rendered ineffective assistance by failing to object to discretionary legal financial obligations (LFOs), and (3) the trial court erred in not conducting an individualized inquiry into his ability to pay discretionary LFOs. He also raises several claims in his statement of additional grounds (SAG).

We hold that (1) there was sufficient evidence to convict Halleck of obstruction and (2) his trial counsel did not render ineffective assistance by failing to object to discretionary LFOs. We also (3) decline to reach his claim of error based on the absence of an individualized inquiry into ability to pay discretionary LFOs and (4) hold that Halleck's SAG claims fail.  Accordingly, we affirm Halleck's conviction and sentence.

### FACTS

In March 2015, Deputy Bradley Trout and Corporal Michael Sargent of the Mason County Sheriff's Department arrived at Halleck's residence after reports that he had assaulted his wife.  Halleck refused to leave the house or let the officers into the house despite their efforts to

communicate with him. After receiving a telephonic search warrant to enter the residence, Trout announced from his car that a warrant had been obtained and that Halleck needed to come out. Sargent also announced that they had a warrant and that Halleck needed to open the door. Sargent held the warrant up to the residence's window where Halleck was standing.

After Halleck continued to refuse them entrance, Sargent struck the door, which then opened. Sargent testified that he did not know whether Halleck unlocked the door after it was hit or if it opened with the blow from Sargent. When the officers entered the house and attempted to arrest Halleck, he continually disobeyed orders and resisted being handcuffed by tensing his arms. Trout and Sargent required the assistance of a third officer, Deputy Cotte,[1] to finally handcuff Halleck.

After a jury trial, Halleck was convicted of obstructing a law enforcement officer. At sentencing, Halleck's counsel addressed Halleck's ability to pay in the defense's sentencing recommendation, noting that Halleck was an aging licensed and certified teacher who worked only sporadically, that he was nearing retirement age, and that a criminal record might impact his ability to return to work as a teacher. The trial court then requested information on Halleck's monthly salary figures as part of its inquiry:

> THE COURT: I didn't really hear any actual numbers as to how much Mr. Halleck makes per month so I can make a determination.
> [DEFENSE COUNSEL]: It's sporadic and part-time, Your Honor.
> THE COURT: So I will set the monthly minimum payment then at $25.00 per month.

Report of Proceedings (RP) at 165. In total, the sentencing court imposed $2,151 in discretionary LFOs.

Halleck appeals.

---

[1] The record does not reflect Deputy Cotte's first name.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Halleck argues that there was insufficient evidence to convict him of obstructing a law enforcement officer based on his refusal to open the door after being shown the warrant. We disagree.

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). In reviewing an insufficient evidence claim, we assume "the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.*

To convict of obstructing a law enforcement officer, the State must show that Halleck (1) willfully (2) hindered, delayed, or obstructed (3) a law enforcement officer in the discharge of his or her official powers or duties. RCW 9A.76.020(1). Halleck only contends that the evidence is insufficient to support the second element.

In *State v. Hudson*, 56 Wn. App. 490, 496, 498 n.3, 784 P.2d 533 (1990), we addressed the meaning of "hinder" and "delay" under former RCW 9A.76.020(3) (1975). The court determined that "hinder" means to "make slow or difficult the course or progress of . . . to keep from occurring . . . to interfere with the activity of . . . to delay, impede, or prevent action." *Hudson*, 56 Wn. App. at 498 n.3. To "delay" means to "stop, detain, or hinder for a time . . . lessen the progress of . . . to cause to be slower or to occur more slowly than normal." *Id*. The *Hudson* court held in part that nonaggressive behavior, such as fleeing from a police officer, can constitute obstruction. *Id.* at 498.

Here, the State provided sufficient evidence to satisfy the hindrance or delay element based on Halleck's refusal to grant entry to the officers despite their presenting a warrant. The officers repeatedly asserted their authority to enter the home, and Halleck repeatedly refused to grant them entry. Halleck refused to leave his home even after Trout acquired a valid warrant and notified Halleck. The officers repeatedly demanded entry and showed Halleck the warrant through the window while at his door. The officers gained entry only after striking the door.[2] This supplies sufficient evidence that Halleck's actions hindered and delayed the officers in carrying out their official duties.

Halleck argues that the forced entry into the house violated his Fourth Amendment rights because the officers failed to let him see the entire warrant before entering his home. However, there is no requirement, and Halleck cites to no authority, that a warrant must be presented before action is taken as long as an officer possesses it.[3] *See State v. Ollivier*, 178 Wn.2d 813, 853, 312 P.3d 1 (2013), *cert. denied*, 135 S. Ct. 72 (2014) (citing CrR 2.3(d)). Because the officers had lawful authority to enter his house, Halleck's refusal to grant them entry hindered and delayed them in the "discharge of [their] official powers or duties." RCW 9A.76.020(1). Therefore, we agree with the State that there was sufficient evidence to convict based on Halleck's refusal to allow the officers to enter after they presented him with the warrant.

---

[2] The record also reflects that Halleck may have unlocked the door and let the officers inside. However, on a sufficiency of the evidence challenge, we take the evidence in the light most favorable to the State. *State v. Gentry*, 125 Wn.2d 570, 653-54, 888 P.2d 1105 (1995).

[3] Halleck also argues in his SAG that his Fourth Amendment rights were violated for the same reasons. This argument similarly fails.

Thus, sufficient evidence establishes that the action hindered and delayed the officers in the discharge of their duties. Accordingly, the evidence was sufficient to convict Halleck of obstructing a law enforcement officer.

## II. DISCRETIONARY LFOS

Halleck contends that his trial counsel rendered ineffective assistance by failing to object to discretionary LFOs and that the trial court erred in not conducting an individualized inquiry into his ability to pay those LFOs. For the reasons discussed below, we disagree that his counsel was ineffective and decline to reach whether the trial court erred in failing to conduct an individualized inquiry.

A.     Ineffective Assistance of Counsel.

Halleck argues that his trial counsel's failure to object to discretionary LFOs constituted ineffective assistance. Ineffective assistance of counsel results from (1) deficient performance and (2) resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984). To show prejudice, the defendant must establish that "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *State v. Grier*, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011) (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). To overcome the presumption that counsel's performance was reasonable, counsel's conduct must be devoid of any conceivable legitimate trial strategy. *Grier*, 171 Wn.2d at 42.

Halleck's counsel did not object to the imposition of discretionary LFOs, but instead presented the facts that he was an educator, worked inconsistently, was nearing the end of his employability, and might be unable to work with a criminal record. Counsel then candidly acknowledged that "his ability to pay is very limited, though not entirely gone." RP at 163-64.

5

Counsel's balanced and candid presentation of the facts, without a formal objection to LFOs, was within the orbit of a legitimate strategy to minimize or avoid discretionary LFOs. As such, it did not constitute ineffective assistance of counsel.

Halleck argues also that his counsel should have emphasized his claimed debt and indigent status. However, Halleck acknowledges that he did inform the trial court that he had no income and had $10,000 in debt. If anything, this strengthens the conclusion that trial counsel's approach was a legitimate strategy. Halleck has not shown that his counsel's failure to object to LFOs constituted ineffective assistance of counsel.

B.      Individualized Inquiry Into Ability to Pay

Apart from his ineffective assistance claim, Halleck argues that the trial court erred in not conducting an individualized inquiry into his ability to pay discretionary LFOs, relying on RCW 10.01.160(3) and *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). He raises this contention for the first time on appeal.

Subject to exceptions not applicable here, we may decline to review issues raised for the first time on appeal. RAP 2.5(a). However, we have recently exercised our discretion to reach *Blazina*-based challenges to discretionary LFOs for the first time on appeal, recognizing that *Blazina* itself found that the pernicious consequences of "broken LFO systems" on indigent defendants "demand" that we reach the issue. 182 Wn.2d at 835. *Blazina* also recognized, though, that the Court of Appeals may properly exercise its discretion to decline to review this issue. 182 Wn.2d at 834.

Under the circumstances presented, we exercise that discretion to decline review of Halleck's contention that the trial court erred in not conducting an individualized inquiry into his ability to pay. As noted, the trial court requested specific information about Halleck's monthly

6

income. In response, Halleck's counsel acknowledged that Halleck had some ability to pay discretionary LFOs. Counsel also presented facts about Halleck's field of employment, his inconstant work history, his age, and the potential effect of his conviction on his ability to work for the trial court to take into consideration. Halleck argues that the trial court improperly failed to consider a $10,000 debt, but points to no evidence in the record that the court in fact failed to consider it. In these circumstances, especially with Halleck's concession of some ability to pay, we decline to review this challenge for the first time on appeal.

### III. SAG

Finally, Halleck contends in his SAG that (1) the court erred in allowing Trout to address the court off the record, (2) Trout's testimony was tainted, and (3) he received ineffective assistance of counsel because his attorney failed to object to Cotte's absence at the trial. For the reasons outlined below, Halleck's SAG claims fail.

A.     Trout's Claimed Statement Outside of the Record

Halleck argues that Trout improperly addressed the trial court to correct part of his police report outside of the recorded transcripts. The record, though, does not include Trout's claimed statement to the trial court. Without some evidence of the substance of this statement, we cannot assess or decide Halleck's contention. If Halleck wishes to argue that Trout's actions were improper, he must do so in a personal restraint petition. S*tate v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

B.     Trout's Testimony

Halleck also argues that the sequence of Sargent testifying before Trout may have resulted in Trout's correction of the police report and therefore tainted his testimony. We disagree.

7

At trial, Sargent testified that he presented the warrant to Halleck through the window. Trout's police report, though, apparently stated that it was Trout who presented the warrant—not Sargent. When Trout testified after Sargent, he stated that his police report was incorrect. The extent to which Trout may have changed his testimony to accommodate Sargent's version of the events is a credibility judgment for the jury, not for this court. *State v. Dietrich*, 75 Wn.2d 676, 677-78, 453 P.2d 654 (1969). The jury knew Sargent testified before Trout and was able to assess Trout's credibility. Accordingly, this claim fails.

C.      Ineffective Assistance of Counsel

Halleck argues that he received ineffective assistance of counsel because his attorney did not object to Cotte's absence. We disagree.

To prove an ineffective of counsel claim for failing to object, the defendant must demonstrate "that not objecting fell below prevailing professional norms, that the proposed objection would likely have been sustained, and that the result of the trial would have been different." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004). There is no evidence that Cotte's testimony would have diverged from that of Trout and Sargent, and there is relatively little dispute between the parties about the relative facts. In addition, Halleck's counsel requested a missing witness jury instruction for another police officer, but was denied because that officer was not "peculiarly available" to the State. RP at 106; *see State v. Flora*, 160 Wn. App. 549, 556, 249 P.3d 188 (2011). An objection to Cotte's absence would likely have been denied on the same grounds.

For these reasons, Halleck does not establish that an objection would likely have been sustained or that it would likely have changed the result of his trial. Thus, Halleck has not established that he received ineffective assistance of counsel on this ground.[4]

CONCLUSION

We hold that there was sufficient evidence to convict Halleck of obstruction of a law enforcement officer, that his trial counsel did not render ineffective assistance, and that his SAG claims fail. We decline to reach whether the trial court failed to conduct an individualized inquiry into his ability to pay discretionary LFOs. Therefore, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

We concur:

Johanson, J.

Lee, J.

---

[4] Halleck also argues that the State failed to comply with *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) because it did not disclose Cotte as a potential witness. However, this assessment requires information absent from the record on appeal. The record does not include discovery and other pre-trial matters. If Halleck wishes to argue that the trial court erred in allowing this, he must do so in a personal restraint petition. *McFarland*, 127 Wn.2d at 335.