IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 83125-9-I |
| Respondent, | |
| v. | DIVISION ONE |
| CHARLES PATRICK FALLON, | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, A.C.J. —A jury convicted Charles Fallon of one count of first degree rape, four counts of first degree child molestation, and one count of communicating with a minor for immoral purposes. He appeals, asserting that the prosecutor committed misconduct by misstating the burden of proof during closing arguments and that the court impermissibly commented on the evidence by using the victims' initials in the to-convict instructions. We affirm.

FACTS

Charles Fallon lived in a travel trailer on a neighbor's property in Renton, Washington. He befriended families in the neighborhood and frequently played with, and gave bike rides to, the neighborhood children.

Victims K.T. and R.K. remember playing with Fallon beginning when they were approximately five years old. Both initially enjoyed spending time with Fallon. But both stopped playing with Fallon between the ages of eight and ten years old because of the molestation. A few years later, either K.T. or R.K. told their friend J.S. that Fallon molested them when they were younger. J.S. told her

Citations and pin cites are based on the Westlaw online version of the cited material.

father, P.S., who reported the abuse to a school guidance counselor. The guidance counselor called the police.

Fallon was charged with one count of first degree rape, four counts of first degree child molestation, and one count of communicating with a minor for immoral purposes.

At trial, both K.T. and R.K. testified. During closing argument, the prosecutor asserted to the jury that K.T. and R.K.'s testimony was credible. The prosecutor argued: "And if you believe them, if you believe [K.T.] and [R.K.], if you found them credible then you have been satisfied beyond a reasonable doubt." The prosecutor also stated: "The [jury] instructions tell you . . . testimony is evidence. The evidence that [K.T. and R.K.] gave you[,] if you find that evidence credible, you have been satisfied beyond a reasonable doubt." Finally, the prosecutor told the jury: "[I]f you find them credible, if you believe them, they have established for you all the elements of each and every one of these crimes. . . . [I]f you believe them when they tell you what happened, you are satisfied beyond a reasonable doubt." Defense counsel objected to each of these statements as misstating the burden of proof. After a side bar with counsel, the trial court overruled each objection.

The jury found Fallon guilty on all counts. Fallon appeals.

ANALYSIS

Prosecutorial Misconduct

Fallon contends that the prosecutor committed misconduct by misstating the burden of proof and reversal is therefore required. We conclude that the prosecutor did not commit misconduct and reversal is unwarranted.

Prosecutors have " 'wide latitude' " in closing argument to argue reasonable inferences from the evidence at trial, including evidence regarding the credibility of witnesses, but their argument must not misstate the applicable law. State v. Crossguns, 199 Wn.2d 282, 296-97, 505 P.3d 529 (2022) (quoting In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 704, 713, 286 P.3d 673 (2012) (plurality opinion)); State v. Thorgerson, 172 Wn.2d 438, 448, 258 P.3d 43 (2011). The defendant bears the burden to prove prosecutorial misconduct. Thorgerson, 172 Wn.2d at 442. To prevail on a claim of prosecutorial misconduct, the defendant must demonstrate (1) that the prosecutor's conduct was improper and (2) the conduct was prejudicial in the context of the entire record and the circumstances at trial. Thorgerson, 172 Wn.2d at 442; State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). If the defendant objected to the alleged misconduct at trial, they must demonstrate that the prosecutor's misconduct resulted in prejudice that had a "substantial likelihood" of affecting the jury's verdict. State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008).

In all criminal matters, the State carries the burden to prove each element of the crimes charged beyond a reasonable doubt. Crossguns, 199 Wn.2d at 297. "Arguments by the prosecution that shift or misstate the State's burden to

prove the defendant's guilt beyond a reasonable doubt constitute misconduct." State v. Lindsay, 180 Wn.2d 423, 434, 326 P.3d 125 (2014). It is misconduct for a prosecutor to ask the jury to decide who is telling the truth. Glasmann, 175 Wn.2d at 704. Likewise, it is also misconduct for a prosecutor to tell the jury it must find that the State's witnesses are lying in order to acquit the defendant. State v. Fleming, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996); State v. Barrow, 60 Wn. App. 869, 874-75, 809 P.2d 209 (1991). "The jury's job is not to determine the truth of what happened. . . . Rather, a jury's job is to determine whether the State has proved the charged offenses beyond a reasonable doubt." Emery, 174 Wn.2d at 760 (citations omitted). Therefore, asking the jury to decide a case based who it believes is telling the truth or lying is misconduct because it impermissibly shifts the burden away from the State. State v. Miles, 139 Wn. App. 879, 890, 162 P.3d 1169 (2007). However, credibility determinations are squarely within the province of the jury. State v. Dietrich, 75 Wn.2d 676, 677-78, 453 P.2d 654 (1969).

Here, Fallon contends that the prosecutor committed misconduct by misstating the burden of proof during closing argument. In his briefing, Fallon takes issue with the following statements from the prosecutor's closing argument, emphasizing portions as follows:

> And if you believe them*, if you believe [K.T.] and [R.K.], if you found them credible then you have been satisfied beyond a reasonable doubt.*
>
> . . .
>
> The instructions tell you, the instructions that Judge McKee gave you told you testimony is evidence. The evidence that they gave you[,] *if*

4

> *you find that evidence credible, you have been satisfied beyond a reasonable doubt.*
>
> . . .
>
> And if the testimony that you heard from [K.T.] and [R.K.], *if you find them credible, if you believe them, they have established for you all the elements of each and every one of these crimes.*
>
> . . .
>
> *If you find them credible, if they laid that all out for you, you have been satisfied beyond a reasonable doubt.*
>
> And that means you don't get to throw up your hands and say I wish I had more evidence. I believe them, but I wish there was more. Because if you believe them and you know why there is no other evidence, but if you believe them and already have more than enough—. . .

And finally:

> And these two witnesses have told you what happened to them. *And if you find them credible, if you believe them when they tell you what happened, you are satisfied beyond a reasonable doubt.* There was no need that you get some corroboration.

Fallon contends that the italicized portions of the prosecutor's argument misstated the burden of proof because the jury could have found both victims to be credible and still drawn other reasonable inferences from the evidence to find Fallon innocent. Regarding the rape charge, Fallon contends that the jury could have concluded from K.T.'s testimony that no penetration occurred and therefore that the State had not met its burden of proving every element of the crime beyond a reasonable doubt.[1] And for the child molestation charges, Fallon argues that even though both K.T. and R.K. testified that Fallon touched their

---

[1] At trial, K.T. testified that Fallon tried to put his fingers inside her "but was unsuccessful" in doing so. She testified that she knew he was trying because she felt discomfort and pain. She said the pain she felt was "outside" her vagina. But she also said that when she felt pain, Fallon's finger was "[s]till on the outside but more towards the inside." And she testified that she felt pain inside her vagina "maybe once or twice."

bottoms, the jury did not have to conclude that this touching was for sexual gratification—it could have attributed the touching to Fallon's "inability to understand boundaries." Lastly, Fallon argues that K.T.'s testimony did not require the jury to find him guilty of immoral communication because the jury could have found that Fallon "acted with a purpose unrelated to sexual impropriety" when he requested that K.T. touch his "front part."

Thorgerson is instructive here. In Thorgerson, the prosecutor discussed the "beyond a reasonable doubt" burden of proof, argued that there were no holes in the victim's testimony, and advised the jury that it should not acquit the defendant if it believed the victims and found her credible. 172 Wn.2d at 454. The prosecutor told the jury: "Look, if you believe her, you must find him guilty unless there is a reason to doubt her based on the evidence in this case." Thorgerson, 172 Wn.2d at 454. The defendant argued that the prosecutor committed misconduct by telling the jury that there was no credible basis for doubting the victim's testimony. Thorgerson, 172 Wn.2d at 454. Our Supreme Court concluded the statements, taken in context, did not amount to misconduct because the prosecutor did not tell the jury there was a presumption that the victim was telling the truth; rather, the prosecutor argued that the jurors should believe the victim's testimony, and if they did, they should find the defendant guilty. Thorgerson, 172 Wn.2d at 454. The Court opined that this was not misconduct, particularly given the latitude prosecutors have in arguing from the evidence during closing argument. Thorgerson, 172 Wn.2d at 454.

6

Here, the prosecutor's statements do not amount to misconduct when viewed in context of the entire case. The prosecutor clearly conveyed to the jury that the State carried the burden of proof by stating: "Beyond a reasonable doubt is the [S]tate's burden and the [S]tate's burden alone." The prosecutor then argued that the evidence the jury heard had "more than established this burden." The prosecutor argued the testimony at trial supported "[t]he only reasonable inference"—that penetration had occurred—and told the jury that it was "necessary that [they] conduct [a] credibility analysis" in evaluating the evidence presented. This was not a misstatement of the burden of proof. Rather, the prosecutor recounted the evidence and asserted that the jury should conclude that the testimony supported a single reasonable inference. The prosecutor did not, as Fallon contends, assert that the jury *must* convict if they found the witnesses credible. The comments Fallon complains of are argument concerning the reasonable inferences the jury could glean from the evidence, not misconduct.

## Use of Initials

Fallon argues that the use of K.T. and R.K.'s initials, rather than their full names, throughout the jury instructions constituted an impermissible judicial comment on the evidence. We disagree.

Article IV, Section 16 of the Washington Constitution provides that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." "This constitutional provision prohibits a judge 'from conveying to the jury [their] personal attitudes toward the merits of

7

the case or instructing a jury that matters of fact have been established as a matter of law.' " State v. Mansour, 14 Wn.App.2d 323, 329, 470 P.3d 543 (2020) (internal quotation marks omitted) (quoting State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006)) (review denied 196 Wn.2d 1040, 479 P.3d 708 (2021)). "We review de novo whether a jury instruction constituted an improper comment on the evidence 'within the context of the jury instructions as a whole.' " Mansour, 14 Wn.App.2d at 329 (quoting Levy, 156 Wn.2d at 721). We presume a comment on the evidence is prejudicial and the State bears the burden of showing no prejudice occurred. Levy, 156 Wn.2d at 725.

Here, Fallon contends that the judge commented on the evidence by using K.T. and R.K.'s initials in the to-convict jury instructions. This court contemplated the same issue in Mansour and held that the use of initials to identify a victim of child molestation in the to-convict jury instructions is not a judicial comment on the evidence. 14 Wn.App.2d at 330. In Mansour, we explained that the name of the victim of child molestation is not a factual issue requiring resolution. 14 Wn.App.2d at 329. Therefore, using initials in to-convict instructions does not impermissibly instruct the jury that a matter of fact had been established as a matter of law. Mansour, 14 Wn.App.2d at 330. Also, a juror is unlikely to presume that a complainant is a victim—or that the court considers them to be—merely because the court chooses to use their initials. Mansour, 14 Wn.App.2d at 330. We observed that "even the use of the term 'victim' has 'ordinarily been held not to convey to the jury the court's personal opinion of the case.' "

8

Mansour, 14 Wn.App.2d at 330 (quoting State v. Alger, 31 Wn. App. 244, 249, 640 P.2d 44 (1982)).

Nonetheless, Fallon argues that Mansour was wrongly decided and urges us not to follow it. In support of his argument, Fallon cites the same cases and recycles much of the same argument as the defendant in Mansour. As in Mansour, we do not find the federal cases Fallon cites persuasive. All four are civil cases in which the respective plaintiffs sought to use pseudonyms to conceal their identities *throughout* judicial proceedings.[2] See Jane Doe v. Cabrera, 307 F.R.D. 1, 2 n.2 (D.D.C. 2014) (permitting use of a pseudonym throughout the pretrial process); James v. Jacobsen, 6 F.3d 233, 240-41 (4th Cir. 1993) (considering pseudonym use throughout trial for parents to protect identity of their minor children); Does I through XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1068 (9th Cir. 2000) (considering pseudonym use throughout pretrial proceedings); Jane Doe v. Rose, No. CV-15-07503-MWF-JCx, 2016 WL 9150620, at *1 (C.D. Cal. Sept. 22, 2016) (court order) (reserving for pretrial conference whether plaintiff would be permitted to use a pseudonym at trial). By contrast, here, both R.K. and K.T. were referred to by their full names throughout trial and their identities were in no way concealed from the jury. Mansour contemplated the same issue now before us and is controlling authority.[3]

---

[2] And two of the cases he cites—Jane Doe v. Cabrera, 307 F.R.D. 1, 2 n.2 (D.D.C. 2014) and Jane Doe v. Rose, No. CV-15-07503-MWF-JCx, 2016 WL 9150620, at *1 (C.D. Cal. Sept. 22, 2016)—are the same cases the defendant in Mansour relied on.

[3] Contrary to Fallon's assertions, published opinions of this court do have precedential value. See RCW 2.06.040 ("All decisions of the court having

14 Wn.App.2d at 328-30 (concluding that the use of initials in the to-convict instructions is not a judicial comment on the evidence).

Ignoring our holding in Mansour, Fallon tries to analogize the circumstances here to those in State v. Jackman to assert that a to-convict instruction that conveys to the jury that the defendant's guilt has been proved is a comment on the evidence. 156 Wn.2d 736, 132 P.3d 136 (2006). But Fallon's reliance on Jackman is misplaced. The defendant in Jackman was also charged with communication with a minor for immoral purposes, of which age of the victim is an element. In Jackman, a critical element of the crime at issue was whether the victims were minors. 156 Wn.2d at 743. And because the two victims testified that they had previously lied to Jackman about their ages at the time of the offenses, their credibility was an issue at trial. Jackman, 156 Wn.2d at 744, n.7. The jury could have chosen not to believe their testimony as to their correct birth dates at the time of the events. Jackman, 156 Wn.2d at 744, n.7. Therefore, the victims' ages were a factual issue for the jury to resolve. Jackman, 156 Wn.2d at 744. Thus, when the court in Jackman included the victims' birth dates in the to-convict instructions, it conveyed to the jury that those dates had been proven true. 156 Wn.2d at 744. This was an impermissible

---

precedential value shall be published as opinions of the court."); cf. GR 14.1 ("Unpublished opinions of the Court of Appeals have no precedential value and are not binding on any court."). And "we are exceedingly reluctant to disagree with recent opinions." Little v. King, 147 Wn. App. 883, 889, 198 P.3d 525 (2008).

judicial comment on the evidence because it allowed the jury to infer that the age element had been proved by the State. Jackman, 156 Wn.2d at 744.[4]

Here, use of the victims' initials is not a judicial comment on the evidence. The victims' ages were not a disputed element; they were all still minors at the time of trial. Like in Mansour, we are unpersuaded that the use of R.K. and K.T.'s initials here conveyed anything to the jury about the judge's personal attitudes on the merits of the case. For these reasons, we hold that the use of the victims' initials in the to-convict instructions was not a judicial comment on the evidence

We affirm.

Smith, A.C.J.

WE CONCUR:

Birk, J.

Andrus, C.J.

---

[4] We note, too, that the Jackman defendant did not take issue with the court's use of the victims' initials in the to-convict instructions. 156 Wn.2d at 740-41.